IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel.)
KEVIN MEAKENS #R01024, )
 )
       Petitioner, )
 )
  v. ) No. 11 C 5825
 ) (USCA No. 11-3256)
KEITH ANGLIN, WARDEN, etc., )
 )
       Respondent. )

## MEMORANDUM

This Court has just received the March 14, 2012 order from our Court of Appeals remanding this case "for the limited purpose of requesting that the district court provide" the state court decision on which this Court had relied substantially in the issuance of its August 26, 2011 memorandum opinion and order. For that purpose this Court took judicial notice of the unpublished August 17, 2010 order of the Illinois Appellate Court for the First Judicial District in its Case No. 1-08-3097, which had affirmed the judgment of the state trial court dismissing the post-conviction petition of petitioner Kevin Meakens (in that respect see, e.g., Mandarino v. Pollard, 718 F.2d 845, 849 (7th Cir. 1983))--and of course this Court did not itself participate in the preparation of the record on appeal, which Cir. R. 10 specifies is to be handled by the Clerk of this District Court.

But in any event this Court has again obtained a copy of the Illinois Appellate Court's order from that court, and it is

attached to this memorandum for delivery to the Court of Appeals.

```
                          _____
                          Milton I. Shadur
                          Senior United States District Judge
```

Date: March 15, 2012

SECOND DIVISION
AUGUST 17, 2010

No. 1-08-3097

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 99 CR 16403 |
| | ) | |
| KEVIN MEAKENS, | ) | Honorable |
| | ) | Joseph G. Kazmierski, |
| Defendant-Appellant. | ) | Judge Presiding. |

ORDER

Following a bench trial, defendant Kevin Meakens was convicted of first-degree murder and sentenced to 28 years' imprisonment. His conviction and sentence were affirmed on direct appeal. People v. Meakins,[1] No. 1-01-1495 (2002) (unpublished order pursuant to Supreme Court Rule 23). Defendant subsequently filed a *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2002)), which the circuit court dismissed after an evidentiary hearing on one issue and after granting the State's motion to

---

[1] On direct appeal, defendant's name was spelled Meakins rather than Meakens.

1-08-3097

dismiss on the remaining issues. On appeal, defendant contends that: (1) it was manifest error for the circuit court to find that defendant had been advised of his right to testify at trial; (2) it was manifest error for the court to find that no prejudice resulted from defendant's failure to testify; and (3) he made a substantial showing that trial counsel was ineffective for failing to introduce defendant's testimony regarding self-defense. For the following reasons, we affirm the judgment of the circuit court.

BACKGROUND

The facts adduced at defendant's bench trial have been detailed by this court previously on direct appeal. Defendant's convictions arose from the fatal shooting of Joel Thompson in the 7100 block of Throop Street in Chicago on June 22, 1999.

According to a statement defendant made to Assistant State's Attorney, Nancy Wilder, in March 1999, a feud started between the boys who lived on Loomis Street, where he lived, and the boys who resided on Throop Street. At the end of March, his friend was shot in the arm and he believed that someone from the 7100 block of Throop was responsible for the shooting. On June 22, 1999, defendant, who was 17 years old, and his next door neighbor, Mario Cowan, rode their bikes to a store at 69th and Loomis Streets. On their way home, defendant decided to turn onto Throop at 71st Street. That was the first time he had ever ridden his bike on that block.

Unbeknownst to Cowan, defendant had a loaded .357 revolver concealed in the waist of his pants. Defendant heard a voice he thought belonged to Myron Jackson, whom he knew from high school, shout out his nickname, "Kevin-boy" from a porch at the corner of 71st and Throop. Defendant and Cowan continued down the block when he saw a man, Joel Thompson, whom he

-2-

1-08-3097

had never seen before, step out from behind a van and stop Cowan. Thompson let Cowan go and then grabbed defendant by the collar. Defendant fell off his bike. Thompson grabbed defendant again, but let go of defendant when defendant pulled away. According to defendant's statement, Thompson never said anything to defendant and did not have anything in his hands. Defendant then pulled out his gun from his waist and pointed at Thompson's chest, from three steps away. Defendant pulled the trigger. After the shooting, he fled, threw the gun in a sewer nearby, and hid in a friend's attic for two days until his mother called police and told them that defendant wanted to turn himself in to police.

Cowan testified that he was 13 years old, and lived next door to defendant, who was friends with his cousin, Jamal. Cowan and defendant were riding their bikes and turned onto Throop Street. Two boys called out to him as "little Jamal," from a porch on the corner of 71st and Throop. He and defendant continued down the block. Cowan heard a whistle from behind him on the porch. He saw Thompson run into the street in front of him and grab his handlebars. Thompson did not say anything to him or defendant and did not have anything in his hands. Cowan told Thompson that he had "nothing to do with that, what they was doing with my cousin and them." Thompson then let go of Cowan's bike and ran toward defendant. Cowan rode away, turned the corner, and heard a gunshot. Cown testified that Thomson was bigger, older, and heavier than him. Cowan stated that he was afraid that Thompson was going to beat them up, and that Thomson was "[g]oing to jump on [defendant] too."

Myron Jackson testified that at the time of the shooting, he was on his front porch with his friend Carl Bates. Thompson, who was Jackson's uncle, was in the middle of the block on the

-3-

1-08-3097

street and Troy Dennis was near them on the sidewalk. Jackson knew defendant from high school. Jackson stated that when he saw defendant and the little boy riding down Throop Street, he tried to alert Thompson because Jackson and defendant had problems in the past and he had never seen defendant ride down the block before that night. Jackson thought defendant "was up to something." Jackson had previously told Thompson about some of the problems he had with defendant. When Jackson heard the gunshot, he ran into the street towards Thompson and saw that he had been shot in the chest.

Troy Dennis testified that on the evening of June 22, 1999, he was outside in the middle of the block talking with Thompson. Thompson was in the middle of the street and Dennis was on the sidewalk, about 30 feet away. Dennis saw defendant ride past Jackson, a woman named Keesha, and himself and wondered what he was doing on the block because he had never been there before that night. He did not hear anyone say "Kevin Boy. Kevin Boy." He then heard a sound he initially thought was firecrackers, but then understood to be a gunshot. He did not see what had happened, but later saw that Thompson was shot and that defendant ran away.

Antonio Patton testified that on June 22, 1999, he was walking toward his house at 7050 Throop Street when he saw Dennis, Keesha, and Thompson. As he walked past Dennis and Keesha, he heard a shot and heard someone say, "[h]e is shot." Patton stated that he had seen two boys ride past him, but did not "pay them any mind."

At the close of the State's case, the defense moved for a directed verdict, arguing that the evidence showed that defendant only "reacted to a situation" and that he did not commit first-degree murder. After the trial court denied the motion, the defense asked for a moment, and after

- 4 -

1-08-3097

a brief pause, the defense rested without calling defendant to testify. The court did not admonish defendant about his right to testify.

During closing arguments, defense counsel argued a theory of self-defense in that defendant reacted to a perceived threat. After hearing closing arguments, the trial court found defendant guilty of first-degree murder and sentenced him to 28 years' imprisonment. In his post-trial motion, defendant maintained that, at most, the evidence supported a second-degree murder conviction.

On direct appeal, defendant contended that the State failed to prove him guilty of first-degree murder beyond a reasonable doubt because the evidence demonstrated that he acted in self-defense, or alternatively, that he subjectively believed, albeit unreasonably, that he needed to use deadly force to protect himself against Thompson. Additionally, he maintained that the trial court abused its discretion in sentencing him to 28 years' imprisonment. Defendant's conviction and sentence were affirmed. People v. Meakins, No. 1-01-1495 (2002) (unpublished order pursuant to Supreme Court Rule 23). His petition for leave to appeal was subsequently denied. People v. Meakins, 203 Ill. 2d 561 (2003).

Thereafter, on April 14, 2003, defendant filed a *pro se* petition for post-conviction relief and the public defender was appointed to represent defendant. Thereafter, the State filed a motion to dismiss defendant's petition. Defense counsel filed a response and a supplemental petition for post-conviction relief which included an affidavit from defendant. Therein, he stated that he did not flee before using a gun because the situation seemed "like a maze" to him. He also stated that he did not recall firing the gun he carried. After a hearing, the trial court granted the

1-08-3097

motion to dismiss as to all issues raised in the petition except for the allegation regarding whether trial counsel was ineffective for failing to advise defendant of his right to testify.

At the evidentiary hearing, the trial court indicated that the evidentiary hearing would proceed as to the issue concerning defendant's right to testify and whether or not he was deprived of that right. Defense counsel argued that had the trial attorney advised him of his right to testify and put him on the stand to explain his actions, the outcome of the case probably would have been different and he would have been convicted of the lesser offense of second degree murder.

Defendant testified at the hearing that his mother hired his trial counsel whom he met twice before trial. Counsel never asked him details about the shooting or how he felt on the day of the shooting and never reviewed his confession with him. Defendant stated that counsel never reviewed with him in detail the criminal charges against him arising out of the shooting or the law that applied to people who shoot someone because they are afraid. He denied that counsel ever told him he had a right to testify at trial. He stated that he did not know that he had a right to testify at trial. If he had known that he had a right to testify he would have testified. He stated that he thought there was a gang war between the two streets, that the boys on the porch were members of the "GDs," which he thought meant "growth and development." However, he did not feel he was in enemy territory at the time. He thought the boys from Loomis and Throop Street were friends because they all went to school together. He chose to ride down Throop Street.

When asked about his affidavit, wherein he stated that he didn't recall firing the gun, he stated "I remember firing the gun, but when it happened I, I didn't hear it." He acknowledged

- 6 -

1-08-3097

that he gave a signed statement and that he had an opportunity to make changes or corrections to the statement. He also acknowledged that he never saw a weapon in Thompson's hand. He also stated it was unusual for the boys on Throop and Loomis to carry guns.

He additionally testified that after Thompson touched defendant, he "[t]hought that he was going to try to kill me or hurt me bad." He thought he might have been armed and was afraid of him. He got up and tried to leave, but Thompson started wrestling with him and they started fighting. When asked how he eventually got away, defendant stated that he "pulled out [his] gun and [he] shot him once." He carried a gun for protection because he had recently "got stuck up" in his backyard. He never intended to shoot anyone that day. He further testified that after the boys on the porch called out his name, he felt "scared a little bit, like shaky." After they called his name, they started coming off the porch and he "felt scared."

Trial counsel, James Sorensen, testified at the hearing that he had been licensed to practice law in Illinois for about 25 years. Prior to private practice in Illinois, he served as an Assistant Public Defender in the Homicide Task Force. He had been working as a public defender for the past two years in Maryland. He estimated that he had tried between 50 and 100 murder cases in Illinois. He recalled being hired to represent defendant from his arraignment in 1999, through his bench trial in September of 2000. He recalled meeting with defendant at least six times in preparation for his trial. He stated that when developing his strategy for self-defense, he included defendant in his decision-making process. He was certain that he reviewed the police reports with defendant. He acknowledged that he did not call defendant to testify at trial.

Q. "Did you ever tell the defendant, Meakens, that he did

-7-

1-08-3097

> not have the right to testify?
>
> A. No.
>
> Q. And who's decision is it ultimately to testify or not to testify?
>
> A. It's actually Mr. Meakens['].
>
> Q. And did you give him the opportunity to make that decision on his own?
>
> A. We discussed that decision I would think twice, maybe three times before the conclusion of the trial. I'm sure we discussed it pre-trial, in going through the reports and discussing our strategy in the case, and I'm sure we discussed it during the trial, certainly when the State rested.
>
> Q. And you never, in fact, failed to tell him that he had the right to testify, correct?
>
> A. Correct."

Sorensen acknowledged that when defendant's postconviction counsel contacted him about the case, he originally confused it with another case he had tried before the same trial judge, where identification was the issue. However, after he reviewed the case, he remembered that the case involved a claim of self-defense, and that he had elicited facts to support that claim and mitigate his conviction.

After considering all of the petitions, the testimony at the evidentiary hearing, and having

-8-

1-08-3097

presided over the trial and, in particular, recalling the conduct of defense counsel at the trial, the trial court found that defense counsel did advise defendant of his right to testify and was available to him. The court further found that counsel did not prevent defendant from testifying in his own behalf. Defendant now appeals from the dismissal of his post-conviction petition.

ANALYSIS

In noncapital cases, the Act provides a three-stage process for adjudicating postconviction petitions in which a defendant may challenge his conviction or sentence for violations of federal or state constitutional rights. People v. Pendleton, 223 Ill. 2d 458, 471 (2006). To be entitled to postconviction relief, a defendant must show that he has suffered a substantial deprivation of his federal or state constitutional rights in the proceedings that produced the conviction or sentence being challenged. Pendleton, 223 Ill. 2d at 471.

In this case, the petition advanced, in part, to a third-stage evidentiary hearing. 725 ILCS 5/122-6 (West 2006). Where fact-finding and credibility determinations are involved, as they are here, we review the circuit court's denial of a petition following an evidentiary hearing to determine whether it was manifestly erroneous. People v. Ortiz, 235 Ill. 2d 319, 333 (2009). "Manifest error" is error that is clearly evident, plain and indisputable. People v. Morgan, 212 Ill. 2d 148, 155 (2004). This standard is also applicable here to the extent the judge presiding over the proceedings had some special familiarity with the trial of the defendant and that had some bearing on the disposition of the postconviction petition. Pendleton, 223 Ill. 2d at 473.

Defendant claimed in his petition that he was denied effective assistance of counsel because his trial attorney failed to advise him of his right to testify, and had he known of the right

-9-

1-08-3097

he would have chosen to testify to establish evidence of self-defense.

To prevail on a claim of ineffective assistance of counsel, a defendant bears the burden to show both that: (1) counsel's representation was so deficient as to fall below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance so prejudiced the defendant as to deny him a fair trial. Strickland v. Washington, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). The failure to satisfy either prong of the Strickland test precludes a finding of ineffective assistance of counsel. Strickland, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

With respect to the first prong, a defendant's right to testify at trial is a fundamental constitutional right, as is his right to choose not to testify. Rock v. Arkansas, 483 U.S. 44, 51, 97 L. Ed. 2d 37, 46, 107 S. Ct. 2704, 2708 (1987); People v. Patrick, 233 Ill. 2d 62, 69 (2009). The decision whether to take the witness stand and testify in one's own behalf ultimately belongs to the defendant, but is generally made after consultation with counsel. Patrick, 233 Ill. 2d at 69. It is defense counsel's responsibility to advise a defendant about his right to testify and to explain any advantages or disadvantages of invoking that right. People v. Vaughn, 354 Ill. App. 3d 917, 925 (2004).

On appeal, defendant initially contends that it was manifest error for the circuit court to reject defendant's testimony at the evidentiary hearing that he had not been advised of his right to testify at trial. He asserts that Sorensen failed to affirmatively "rebut" the allegation that defendant claimed he was not advised of his right. Nevertheless, the burden was on defendant to establish evidence to support his contentions (Pendleton, 223 Ill. 2d at 471), and the record

1-08-3097

provided ample evidence to support the trial court's finding that defendant failed to meet that burden.

Sorensen unequivocally explained that he did not fail to advise defendant that he had the right to testify, that he gave him the opportunity to make that decision on his own, and that they discussed the decision whether to testify two or three times. He was certain they discussed it prior to trial in going through the evidence and discussing the strategy in the case, and he was certain that they discussed it during the trial, "certainly when the [S]tate rested." He also testified that in developing a strategy for self-defense, he included defendant in the decision-making process, and met with defendant at least six times in preparation for trial. He recalled going through the police reports and discussing the issue of self-defense.

Defendant testified to the contrary, stating that he only met with his retained counsel twice, and never discussed his right to testify or the law relating to his case. Despite acknowledging meeting with him for over a half an hour the second time, defendant initially stated that counsel asked him nothing. Defendant then testified, "I don't remember," what counsel asked him, and then stated that the only thing his counsel told him was the police report indicated the shooting was not from close-range. Defendant did not say anything to counsel in response.

Contrary to defendant's assertion, the testimony at the hearing established a conflict in the evidence which the trial court was required to resolve. People v. Siguenza-Brito, 235 Ill. 2d 213, 224 (2009). The court made a credibility determination after hearing the conflicting testimony, that defendant was indeed advised of his right to testify, and additionally was not prevented from testifying in his own behalf. Defendant directs our attention to defendant's limited criminal

- 11 -

1-08-3097

experience and his youth in assessing his credibility. Defendant also directs our attention to the extent that Sorensen had difficulty recalling some other aspects of the case which he tried nine years prior, and that he initially confused the matter with another case he tried. However, those aspects went to the weight of the testimony. Under a manifest weight of the evidence standard, the trial court was in the best position to weigh that testimony and observe the conduct and demeanor of the witnesses. In re D.F., 201 Ill. 2d 476, 498-99 (2002). The reviewing court will not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be draw therefrom. In re D.F., 201 Ill. 2d at 499.

Accordingly, where trial counsel informed him of his right to testify, defendant has failed to meet the first prong of Strickland to show that his counsel's representation with respect to his right to testify was deficient. Since this prong was not satisfied, there is no need to determine whether defendant established the prejudice prong. Strickland, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

In a related argument, defendant contended in his petition that trial counsel was ineffective for failing to introduce defendant's testimony at trial to establish his belief in the need for self-defense. Defendant specifically asserts it was manifest error for the trial court to find that defendant was not prejudiced by trial counsel's failure to insist on his testimony because it would have established the imperfect self-defense necessary to mitigate his first-degree murder conviction to a second-degree conviction.

However, the trial court never made a finding as to prejudice because the court found that

- 12 -

03/15/2012 10:29    3127936306                           1ST DIST APP CRT                           PAGE 14/15

1-08-3097

trial counsel indeed advised defendant of his right to testify and, therefore, was not deficient under the first prong of Strickland. Thus, the trial court's factual finding disposed of this related contention. As stated previously, the decision whether to take the witness stand and testify in one's own behalf ultimately belongs to the defendant. People v. Madej, 177 Ill. 2d 116, 146 (1997). A defendant who decides to testify faces serious risks of impeachment and may open the door to otherwise inadmissible evidence. Patrick, 233 Ill. 2d at 69. When a defendant is cognizant of the right to testify, and fails to assert it at trial, he is deemed to have acquiesced to his counsel's strategic advice that he not take the stand and forfeits any claim of ineffective assistance based on a violation of his right to testify. People v. Enis, 194 Ill. 2d 361, 400 (2000); see also People v. Smith, 176 Ill. 2d 217, 235-36 (1997) (defendant's decision not to testify after advice of counsel must be viewed as strategy with which he agreed); People v. Adams, 338 Ill. App. 3d 471, 475 (2003); People v. DeRossett, 262 Ill. App. 3d 541, 546 (1994) (advice not to testify did not constitute ineffective assistance of counsel unless evidence suggested that counsel refused to allow defendant to testify).

Here, the evidence presented at the evidentiary hearing was that defendant was advised of his right to testify, he discussed that right with counsel, he was not prevented from testifying, and he did not testify. Accordingly, where defendant did not contemporaneously assert his right, he knowingly waived it. See Smith, 176 Ill. 2d at 235-36 (to waive a right to testify all that the defendant needed to know was that the right existed and he contemporaneously failed to assert it). To the extent defendant additionally argues that the trial court dismissed his claim that his counsel was ineffective for failing to support the defense of second-degree murder with his own

1-08-3097

testimony, the claim was premised on the erroneous belief that he was not advised of his right to testify. Consequently, the trial court properly dismissed the postconviction petition.

For all of the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

THEIS, J., with CUNNINGHAM, P.J., and KARNEZIS, J., concurring